22-1016 Levine-Schwab Partnership doing business at Schwab Multimedia, LLC, Appellant v. Federal Communications Commission Mr. Adamchak for the Appellant, Ms. May for the Appellant Good morning, Your Honors. May it please the Court. My name is Keenan Adamchak, and I represent the Appellant, Levine-Schwab Partnership, doing business at Schwab Multimedia, LLC. Your Honors, I would like to reserve three minutes for rebuttal. My client is before the Court today because the FCC acted arbitrarily and capriciously in denying Schwab's tolling extension request for its AM Broadcast Station's construction permit at the height of the COVID-19 pandemic. Justice and equity require that the FCC's order be vacated, the denial of tolling be reversed, and the station's construction permit and its pending modification applications be reinstated. This Court must find the favor of the Appellant for three reasons. First, the FCC failed to provide Schwab with fair notice of its departure from its liberal tolling standards established in the third toll. These liberal tolling standards created a legitimate reliance interest for Schwab, which reasonably followed in its fourth tolling request. Second, in denying Schwab's tolling request, the FCC failed to provide an explanation for the application's disparate tolling to Schwab, both internally between Schwab's tolling request and externally with those of other similarly situated broadcasters. This Court has long held that such agency actions are arbitrary and capricious and undermine the integrity of the administrative process. Finally, the FCC blindsided Schwab by denying tolling based on the contrary and unargued basis of site loss. Nevertheless, the FCC permits tolling to be granted for site losses beyond a permittee's control under the agency's waiver standard. The unilateral actions of Schwab's landlord in revoking its site access by the diplexing issues were being resolved beyond Schwab's control. Schwab's arguments that its site loss serves as a valid toll and waiver basis are judiciable because the FCC first determined sua sponte that site loss was the proximate cause of Schwab's construction delays and simultaneously denied Schwab the opportunity to review that finding by raising the issue in a final agency order. As for my first point, fairness is required when the FCC provides Schwab with exacting tolling standards for the fourth tolling request. As both the FCC and this Court have observed, Schwab has standing before this Court because the denial of Schwab's tolling request and the subsequent expiration of its construction permit is redressable by a favorable decision because it would return Schwab to an opportunity to construct the station. For standing purposes, we have to assume that there is merit in your arbitrary and capricious arguments just for the sake of resolving standings, but I'm not sure that we have to ignore the site loss issue when we assess standing, do we? No, Your Honor. We don't have to worry about the site loss issue because the restoration of the construction permit, the redressability by nearly restoring the construction permit, restores an opportunity to construct. Construction permits are malleable and they can be modified up until time of the expiration date by moving to other sites. So just because Schwab can't build at the first site, it can if it's a minor modification application to restore. So long as those applications are granted up until the time of the expiration date, they can move to another site and build there. On remand, the FCC cannot use their discretion to deny grant of those minor modification applications as the Court previously found in NTCH. Is your first application to transfer still pending for the FCC? So when they granted then ungranted and put into pending status? All those applications have been now dismissed, Your Honor, as a result of the forcefully orders. So even the one that was pending has also been dismissed? All of them have been dismissed. Okay, so you don't have anything pending before the FCC, right? Nothing, Your Honor, because the underlying construction permit had expired. The pending minor modification applications followed that. They had to be dismissed as well. So we're asking, Your Honor, for reinstatement of those minor modification applications to pending status as a result of restoration of the construction permit.  Imagine that we rule in your favor and imagine that everything that possibly go right for you in terms of getting this station built goes right. Walk me through how that would happen and let me know when the thing that's happening is certain to happen or it's just something that you hope. Yes, Your Honor. And maybe start by how long you would need to get it done. You would need and we request the restoration to the status quo, which would be 6 months and 22 days on the permit. Schwab would require the second modification application to be granted as it demonstrated in its petition for reconsideration. I know I'm interrupting you, but I'm going to let you finish. I just want to make sure I understand. We can't grant that second modification to you today. No, it would have to be granted. Okay, please carry on. So assuming that the construction permit is reinstated, the tolling order is vacated in reverse. We're asking Schwab to return to a position where it had 6 months and 22 days struck. And on remand, we would request expedited treatment of the second modification application where Schwab has authority to build. Schwab, as demonstrated in the petition for recon, provided a copy of a site lease at that site. Schwab is ready and willing and able to build at that site as soon as that permit is granted. And I don't want to interrupt you. Was that the end? Yes. Okay, so then the second modification, that would be modification that allows you to build at a site that's different than the original site, right? Correct. And have you a guarantee from the owner of that site that you can build? Yes. And you think you could get this built in 6 months and 22 days? Yes. It's a very small tower. It's about 50 feet high. They can get it at that with 6 months and 22 days. It's plenty of time to get all that done. What evidence in the record is there of that? In the petition for recon, there is a site lease that is triggered upon FCC approval of the second modification. And once that goes forward, they will be able to build. They will still need to acquire tower equipment, but they are ready to go. As the record also shows, they've acquired for equipment with manufacturers. And as soon as they've been working in the past couple months, as soon as they get that granted, they'll be able to hit the ground. But the site lease is in the record. If it took the FCC, let's say, 6 months and 12 days to grant the second modification, would that leave you 10 days to build the tower? Yes, it would. How quickly does the FCC usually move on something like a second modification request? The FCC, it varies. If you request expedited treatment, I've seen applications granted within a month, within weeks. If you don't, it could take months. But on remand, the Schwab would request expedited treatment and push the FCC to get it granted. Just to give you a chance to kind of rebut whatever answer the government, whatever worst-case scenario the government might give when I ask them this question. I'm going to ask them, what are the reasons why that second modification request might be denied? And would you come back and say there are no plausible reasons that a second modification would be denied? As far as I know, Your Honor, there are no reasons why that application would be denied, the second mod. I know there were issues with the first mod, but I can go back and review and file a 28-J letter to explain and look closer at that issue. Has anyone filed objections to that one? To the second modification application, I do not believe, Your Honor, only to the first. And just to clarify, I thought sometimes time periods were told during dependency of administrative proceedings. So would your six months be told while you're waiting for the FCC to act on the expedited motion for site approval or not? I believe so, Your Honor. Under 3598B2, it can be told for administrative delays resulting from challenges to the CP. Challenges to the CP, so I'm not recalling what the CP is? I'm sorry, the construction person, Your Honor. We don't know about delays while you're waiting for a site transfer motion to be approved. No, not for delays for a site transfer. It would have to be a challenge directly to the construction. Presumably, if you were to prevail, the FCC wouldn't drag its feet to deliberately sabotage your efforts. That would be quite untoward by the government. Yeah. So as with regards to fair notice, fairness required, the FCC provides Schwab with exacted standards for the four tolling requests. As both the FCC and the court have observed, sudden departure from prior standards creates a reliance concern of warranted notice. Schwab reasonably understood the third tolling order to require that it merely file a status report requesting continued tolling treatment due to the pandemic. As for my second point, under the melody music standard, the FCC may not treat similarly situated parties differently without adequate explanation. The FCC applied different tolling standards to Schwab, and the fourth tolling request is to either the second or third tolling requests. Not only was the FCC internally consistent, the FCC also applied different standards to Schwab than to its tolling requests of similarly situated broadcasters, wherein the FCC found that COVID was the reason for the construction delays, and the landlord's denial of site access was a legitimate tolling request. As for my final point, site loss, the FCC blindsided Schwab by denying tolling for site loss. Contrary to the FCC's arguments, the FCC has always considered waivers construction deadlines based on site loss on a case-by-case basis under the general waiver state. Here, the FCC failed to provide Schwab with a requisite hard look at Schwab's case by examining whether its landlord's actions were outside of Schwab's control. What did you do to establish good cause for the waiver? If your request for tolling were to be construed as a waiver, in your fourth application, what did you demonstrate there to establish good cause? In the fourth tolling request, to demonstrate good cause, we demonstrated that it would be, granted the waiver would give us more time to construct in light of the ongoing delays. The good cause, it was, the idea was that AM broadcast stations already have a hard time getting themselves built. It's just the basic nature of their technology. You have to use a whole tower to radiate the signal. And so site choice is basically, as the FCC observed in their AM revitalization plan, AM broadcast stations have a lot of trouble and that type of transmission is going away. So good cause would give Schwab enough time in face of all these circumstances beyond its control that are preventing its ability, despite its diligent efforts to get constructed, more time to get constructed. So that would be the good cause. When you were trying to show, I guess, on the reconsideration of the fourth tolling request, that COVID was the reason you couldn't get anything built, I would have thought one way to show that was just email a contractor and say, I want you to build a radio tower at this address. And then the contractor might reply back, I'm too full because there's a COVID backlog, or I can't do it because I don't have workers willing to work during the pandemic, or there's a lockdown, whatever the answer is. But I think you didn't do that because you can't ask a contractor to build on a site where you don't have permission. Is that why? Your Honor, I do not know why they did not ask, demonstrating the evidence of communicating with tower crews as to why, whether or not they could build at a site, whether or not they had authority to build at a site. My understanding is they were in communication with various tower crews, but for whatever reason, that evidence wasn't presented in the record. I do not know how to answer the question of whether or not they could build at a specific site, whether or not they have authority. Well, there was no site where they had permission to build during the period of time in question, correct? They still had at least at the original site. They didn't have permission to build the original site. They were trying to work out a technical issue to gain the. Yeah. Did they have permission to build on the original site during, say, 2020? Thank you. So. So as to the Harlow standard. Were they still trying to sort out? Is there any evidence in the record that they were doing something to address the diplexing issue in 2020 or 2021 at the original site? Or had that been abandoned as well? The only evidence in the record of them continuing to work for the diplexing site was in each of my minor modification applications. They address the fact that there were issues at the site that hopefully they could go back and solve. They also went back and addressed these in their pleadings in the petition for reconsideration. Did they explain what they were doing to try to resolve them other than they hope to resolve them? I do not know, Your Honor. From what I understand, they were in negotiations with the landlord and the other broadcast stations that were also using that site to resolve the issue. I do not know the specifics, but I can get back to you on that. Your Honor, it's just that to obtain tolling for an extension of tolling under the so-called Act of God provision, you're supposed to show steps that were proposed to be taken to resolve impediments. They haven't taken or you proposed to take to resolve impediments to construction. Are you referring to 733598D, Your Honor? I don't have the numbers memorized. The regulation where it says if you get an initial extension under Act of God, and then if you want to extend it further, you have to make a more particularized showing of three things. And the third thing is that you have to show what steps you've taken or proposed to take to address the asserted impediments to construction. Yes, Your Honor. That rule, Schwab reasonably believed that rule was not applicable to them for the fourth tolling request, because in the third tolling request, it just merely asked for a status report of the continued treatment. And given the fact that the third tolling order granted the third tolling request based on, as the FCC put it, generalized grievances, it would believe they were under a liberal tolling standard so that 3598 didn't apply. The grant of the third tolling request said if construction cannot resume within six months. So, first of all, I guess you had to show that construction was not able to resume within those six months. And when I say a status report requesting continued tolling treatment, there's nothing in there that says we're not applying regulations that require a particularized showing for an extension. It doesn't say we're suspending our usual requirements. You just have to mail something in and ask for an extension. There's nothing in that third tolling grant of the third tolling request that says our ordinary standards aren't going to apply. Yes, Your Honor. But at the same time, the third tolling request was granted under liberal standards, as the FCC admitted in the order. But they never said we're going to keep these liberal standards going, did they? Where did they say how long we're going to keep these liberal standards going? They did not. Okay. And then the letter that you rely upon doesn't say anything about not applying existing regulations. And it's prefaced with if construction couldn't begin in the previous six months, which suggests a showing, then the status report, there's no reason to read status report as inconsistent with complying with the regulation. I'm trying to understand why your client thought all it had to do was request another extension and not make the regulatorily required showing. Because, as I said, they understood the order to not require a heightened standard because it was granted based on generalized grievances. And notwithstanding the fact that the order also said they needed to show that construction did not complete, they read that sentence of status report continued treatment as just saying that. Because, as the FCC said, in other cases, they'll either cite 7390AD or they'll lay out what you actually need to do in your next steps for other broadcasters that were granted tolling. So as Schwab saw it was, oh, we just need to request a status update. Yeah, construction did not occur. We've got to remember things are still in flux in September 2020. There are no vaccines. People will work at home. The vast majority of people will work from home. The support is still remote. So in this time of uncertainty, they felt that the FCC would continue to apply their liberal tolling standards going forward. Okay, thank you. We'll give you a couple minutes for rebuttal. Thank you. Good morning, Your Honors, and may it please the court. I'm Rachel Proctor-Maye for the FCC. And I'll start with standing. As Your Honors noted, the opportunity posed by a, presented by a permit doesn't have value if you can't take advantage of that opportunity. And there's nothing in the record that shows that it's more than speculative that Schwab could have done. And that Schwab could take advantage of that opportunity. There's the three sites that have been identified. The first two failed for technical reasons. And there is nothing in the record that suggests that those technical reasons have ever been resolved. The third site, which Schwab put in the application for, with its petition for reconsideration, has never gone through FCC approval. Not for an exercise of policymaking discretion, but for technical compliance with the various requirements that are applicable. The application is in the JA at 227, and it'll give you a sense of the kinds of things that the commission is going to review the application. Schwab's counsel represented that the owner has guaranteed that construction can happen upon FCC approval. So, what the record shows is that the lease, this is JA 160, the lease has not been executed. It's signed by Schwab, but not the lessor. And it says that the agreement is void until the approvals, but it doesn't specifically say that there is a trigger provision or show that the... Are you talking about the first original site? No, this is for the 2020 site. So, the one that it put in an application. This is the site that if they were to get you to grant the second modification, they would possibly be able to build on the site. And you're saying they haven't even gotten a signed lease for that site. According to this record, it is not clear that they have executed a lease or will get the... How fast does the FCC usually decide a second modification request or expedite a decision? Something like the second modification. It can happen very quickly. I have been told by the Bureau that they would not hold the time that they'd be reviewing this against the permit. So, they would, so that if they get the second modification granted, let's say in seven months, they'll still have six months and 22 days. That is my understanding. Okay. And what are some reasons to deny that second modification? Not that specific, but just in general, why does something like that get denied? A lot of times it has to do with transmission issues. So, for example, there was a ground conductivity issue that hung up the second application. That just means, as I understand it, the radio frequency emissions are interfering with other transmissions that need to occur. I think it was probably their burden, not yours, their burden to show that it's likely the second modification request will be granted, which would then make an order by us able to redress their issue. But from your perspective, how likely is it in run-of-the-mill modification request for a new site? I cannot answer that question because we haven't reviewed this application. I'm just saying, do they get granted 99% of the time, 1% of the time, 50-50? I do not know the statistic on that. Again, it's their burden. I would say that it is not completely unusual for sites to run into issues getting approved. So, for example, in addition to the issues with the second modification here, the WMLB case that is cited, that also ran into issues with their first approved site getting approved. And if we think of their original site as site number one, and then we think of the next place they tried to get permission as site number two, they struck out on site number two, right? Because it turned out that got granted and then denied? Correct. That was the ground conductivity issue.  Again, there's nothing in the record as to whether there's any market value for an AM radio construction permit that is about to expire. So we would contend that's also speculative. I thought that there was a case that was cited in the paper of an example of an AM construction permit being sold or at least being marketable. Oh, yes. Construction permits can be marketable. But, again, it's Schwab's burden to demonstrate a likelihood of regress. And here, again, where the permit is about to expire, where Schwab has been unable to get this over the finish line since 2016, it remains speculative whether this construction permit is marketable, particularly in Los Angeles where there's well-documented issues with getting AM radio stations going. So turning to the merits, I'll start with the showing of the pandemic-based delay. How often do companies get to the level of fourth tolling requests? I also don't know that. You don't know that? No. Okay. I just didn't know if we were talking about briefing extensions. They just keep coming in? Sure. The purpose of the commission's framework is to avoid the issue of sequential tolling requests. The streamlining orders in 1998 and 1999 were trying to solve the problem of endless iterative requests for extensions. And so that's why they put together this system of strict criteria under which automatic tolling is required and then require a showing of exceptional circumstances beyond a permittee's control to get a waiver. And as Schwab admits, the site loss can only be considered under that waiver standard. So I'm going to transition to the site loss since we're on that. Schwab's main argument is that the landlord's actions were outside of the permittee's control, but that's not what the commission looks at in assessing whether the construction delay was outside of the permittee's control. The commission looks to factors such as timing and the permittee's diligence because if you haven't done everything in your control to resolve the impediment, you can't say that the construction delay was outside of your control. This is discussed in the church planter's opinion in the briefing. One of your main arguments was that they hadn't raised waiver before the commission. Waiver based on site loss, yes. But they certainly were arguing about tolling. And it's rather confusing because the commission itself sort of uses both terms, waiver and tolling interchangeably. It would warrant the tolling of construction time, entertain requests for waiver of our strict tolling provisions, tolling through waiver. And so it seems to me a bit much then to pin a lot of weight on the fact that they use the word tolling rather than waiver because waiver just seems to be sort of this formalistic way of asking for tolling. Now, substantially a different showing, you can argue about that. But it does seem to me that the action is doing that whether they ask for waiver or tolling, given the interchangeability of those terms and the commission's own words, but whether they met the waiver standards. Is that right? It's hard to say they didn't argue it when they were talking about tolling. Yes. And so the question really is whether they met the standards for a site loss or tolling. Right. Two points on that. Schwab did not seek an extension based on site loss at all. It didn't seek tolling. It didn't seek waiver for a site loss. And so the site loss only came up as one of the reasons that the commission concluded that it had not shown that the pandemic didn't have a site to build on. And so it's not a formalistic distinction to say that Schwab simply didn't raise site loss. And so there was nothing in the record to speak to whether there was a rare and exceptional circumstance beyond its control. And then just to get to the interchangeability, sometimes confusing use of tolling and waiver. It is true that when you waive the tolling rules, the result is that the deadline is full and that some of the use of language is not as clear as it could be. However, they still are two separate rules. And in the context of this order, it was very clear in discussing the site loss that the commission was only considering tolling under the rules, rule-based tolling. And that's because the commission recognized the possibility of waiver as distinct from tolling under the rules. That's in footnote 6 and also in footnote 51, using both terms, tolling and waiver. And so in discussing the site loss, it only addressed tolling. In addition, the application for review was only challenging the denial of tolling. And so it's hard to say that that statement was a decision on when a waiver might be applicable because a waiver just simply wasn't an issue. So returning to the issues. Is the FCC planning to reauction this? I'm sorry. Is the FCC planning to reauction this? The FCC has not made plans about whether it will or will not reauction it. However, even if it doesn't reauction it, the spectrum could still be put to use. For example, another AM license holder could file a modification application to enable it to use the spectrum to expand it. So returning to the issue of whether Schwab showed that the pandemic had interfered with its construction. Obviously, Schwab was on notice of the commission's standard for extensions of waiver requests. And Schwab's argument is simply that the commission should have applied a more lenient standard. As you observed, Your Honor, the Bureau never said it was waiving the rules. It said status report, which on its face implies basically what the rules require. And then as to the third tolling request, there was no... Was I right or was I wrong? I mean, a status report doesn't sound like an application for extension of tolling under the regulations. Status report sounds like, hey, just let us know how things are going. Because it's a COVID pandemic and we were also... Things are still quite locked down and unsettled in September of 2020. It still implies more than a BEHR notification. And so then the reasonable thing to do would be to look to the published rules and follow those requirements. Did everybody else get that? Did other companies get that? They've got initial March, April, spring of 2020 extensions based on the pandemic. Did everyone else... I mean, I assume this was like a standardized letter that was issued for extensions at the time. So at that time, March 2020. In spring. As we all recall, the world's reached to a halt. And so, yes. I'm assuming this was kind of standardized language that was used is all I'm asking. I do not know if the language was standardized. I understand from the Bureau that people were panicking and putting in requests for tolling or waiver in various forms. And the Bureau was granting them immediately because of the urgency of the situation. But there's no reason that you would use specialized language for... Correct. So we can assume this is standard. I'm just curious because it is curious language. It doesn't say, you know, make a submission subject to... I'm sorry. He cited the number, whatever the long number for the regulation is in the subsection on second rounds for Act of God extensions. Sure. But I think the natural read is not that if the commission does not say the rule applies, you can assume it doesn't apply. It's that if the rule, if the commission doesn't say it's waived, you should assume that it does apply. And so that's one of the reasons why Schwab couldn't draw any inferences just from the term status report. The other reason is that in its fourth tolling request, the one that it filed in September 2020, it cited the commission's, it was the Bureau's, public notice regarding waivers for COVID-based issues. And in that, the Bureau made very clear that anyone seeking an extension based on COVID needed to make a specific individualized showing of the effects of the pandemic on the permitee. So there was no reason for Schwab to have looked back to the third tolling. If they had had a site to build on in September 2020, Schwab had had a site that they could begin building on immediately in September 2020, and they asked for tolling on the grounds that there's a pandemic and so they can't get built in time, I wouldn't think that they would have to demonstrate very much because you could just turn on the news or open a newspaper. And I mean, there were states that were pretty open in September 2020, but California was not one of those states. And so to me, everything just keeps coming back to the site loss problem. They couldn't build in September 2020, pandemic or no pandemic, because they had no place to build. If they had a place to build, why am I wrong that they couldn't have just told the FCC, California is in the middle of a pandemic and they're, it made it really hard for a lot of people to do a lot of things. Perhaps, perhaps for very good policy reasons, they've made it really hard for a lot of people to do a lot of things. That would require a waiver of the commission's rules. So that's why they couldn't do it. If they had asked for a waiver, they could have potentially asked for one. But it's showing what's wrong with the showing that it is that it when it had the opportunity to put in its showing of how the pandemic had affected it. It didn't show that the pandemic had actually interfered with being able to get crews to the site. I get that. And the reason is I get I get that they didn't make concrete showings. And I get that they may have not used the word waiver or mislabeled this bureaucratic requirement versus that bureaucratic requirement. But this kind of from a big, big picture, if we're just trying to figure out, you know, should this type of thing be granted by the FCC, not granted by the FCC? It seems like in September 2020, the prospect that COVID made it difficult, if not impossible, to build the kinds of things on the timelines that they used to be built was Race Ipsit. I think a helpful thing would be to compare Schwab's showing to the kinds of showings that other permittees made. It is possible to show. Why wasn't why wasn't Race Ipsit? Because of the reasons that this. That this framework is in place, the commission was trying to prevent this endless seeking of extensions of time. And so when it put together that framework, it recognized that there may be in the case of God, there may be disasters, but that you don't get to just keep saying, hey, I suffered a disaster until forever. You have to make a specific showing of how the disaster continues to affect you. Don't you think in the context of California in September 2020, the disaster was ongoing? It was a the pandemic and was obviously still continuing. However, it and also just before I go too deep into this, obviously, site loss is a completely sufficient. I think I'm with you on site loss. Yeah, site loss is a completely sufficient basis to affirm. But on the pandemic. The Bureau gets into more of this than the commission did, but there were plenty of businesses that were available to work. The. The filings that Schwab put in that list the different restrictions demonstrate that there were businesses that were able to operate radio stations was one of the essential services and also construction in support of that. So I think it wasn't the commission was not required to assume that Schwab could build. Thank you very much. Thank you. Mr. Adam check, we'll give you two minutes. The first point I want to address is redress. So, as the court observed a competitive enterprise Institute versus National Highway Traffic Safety Association party may not approve grant of the requested relief cert to address. And the court must also assume success on the merits and that the FCC would not use his discretion to deny grant of the application. So, the fact that the FCC is saying that we can't, it's too speculative, because we do not have a current site to build that we cannot be successful on the merits based on the. Sorry, excuse me. That the relief requested won't address our injury. Our injury was being deprived of the ability of instructors station you're requesting by the daycare of that of the order restoration of the construction permit. That will restore Schwab's drive right to opportunity to construct. And as I said earlier, the construction permit only conveys the right. It can be modified. It could be sold and on appeal. I mean, I'm sorry on demand. We have to assume the merits minor mod. Or the station being sold and those applications being great. As for my 2nd point, as as for deference, the FCC acted on reasonable here, it should not be a quarter deference as to the terminology and the intent of what steps needed to take next. As we alluded to earlier, there was a lot of uncertainty going on at the time and between March and September 2020 as to what what the future held with the pandemic. The FCC in that uncertainty, the confusion on the ground, clearly the FCC needed to lay out guideposts or what Schwab needed to do next. Translator notice did not kind of feels like hiding about what particular showing needed to be made. It's not like debating where to put the chairs on the deck of the Titanic when really the problem is. You were asking for an extension and after long way more than 3 years, you didn't have a place to build at the time. You applied for the 4th extension. Yes, your honor. That's true. And that's the basis for your decision. Yes. Why should we give you more time? You still don't have a place to build. This is the FCC alluded to way back in the streamlining orders. We will grant extensions as a case by case basis for circumstances beyond a purpose. Did you show did that was the pandemic make acquisition of a new site beyond your control? I don't think so, because you talked about work. You were working on the site, the mall site, the second site. So that the pandemic wasn't interfering with your ability to acquire a second site. It was interfering with our ability to move forward to as and to put things into place to actually build the site. But first you had to show the FCC you had a site and you didn't do that in your motion. They need to show that we had a site. We only needed to show a following up for a request that the pandemic continued to delay construction. All right. Thank you. Thank you, your honor. Thank you very much. The case is submitted.
judges: Millett, Wilkins, Walker